UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| **LELAND FOSTER**, | ) | |
| | ) | Case No. 2:26-cv-11334 |
| And | ) | |
| | ) | |
| **DEREK MORTLAND,** | ) | Judge: |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **UTICA GROUP LLC,** a Michigan | ) | |
| limited liability company | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

Plaintiffs, Leland Foster and Derek Mortland, by and through the undersigned counsel, Owen B. Dunn, Jr., hereby file this Complaint against Defendant Utica Group LLC, a Michigan limited liability company, for injunctive relief, attorneys' fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA"), alleging as follows:

## JURISDICTION AND VENUE

1. This action is brought by the Plaintiffs, Leland Foster and Derek Mortland, and on behalf of individuals similarly situated, pursuant to the enforcement provision of the American with Disabilities Act of 1990 (the "ADA"), 42

1

U.S.C. § 12188(a), against the Defendant as delineated herein.

2. The Court has jurisdiction pursuant to the following statutes: 28 U.S.C. § 1331, which governs actions that arise from the Defendant's violations of Title III of the ADA, 42 U.S.C. § 12181, *et seq.*; 28 U.S.C. § 1331, which gives the District Courts original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States; 28 U.S.C. § 1343(3) and (4), which gives District Courts jurisdiction over actions to secure civil rights extended by the United States government, and 28 U.S.C. § 1367, as Count II utilizes the same core of operative facts as Count I, and is therefore subject to supplemental jurisdiction.

3. Venue is proper in the Eastern District of Michigan as venue lies in the judicial district of the property *situs*. The Defendant's property and operations complained of by Plaintiffs are located in this judicial district, where the business of public accommodation is conducted, including the acts complained of herein.

## PARTIES

4. Plaintiff, Leland Foster ("Foster" of "Mr. Foster") is an Ohio resident, is *sui juris*, and qualifies as an individual with disability as defined by the ADA, 42 U.S.C. § 12102(2), 28 C.F.R. 36.104.

5. Plaintiff, Derek Mortland ("Mortland" or "Mr. Mortland") is an Ohio resident,

is *sui juris*, and qualifies as an individual with disability as defined by the ADA, 42 U.S.C. § 12102(2), 28 C.F.R. 36.104.

6. Defendant Utica Group LLC operates and owns a La Quinta Utica located at 45311 Park Ave, Utica, MI 48315 in Macomb County. Plaintiffs have each patronized Defendant's hotel and business previously as a place of public accommodation.

7. The hotel owned and/or operated by the Defendant was originally built in 1997 by the Defendant Utica Group LLC (or its predecessor) and underwent extensive renovation and alteration by the Defendant Utica Group LLC (or its predecessor) which concluded in 2017 and is non-compliant with the remedial provisions of the 1991 ADA Standards for Accessible Design or 2010 ADA Standards as applicable for newly designed and constructed or altered facilities. Full compliance with the implementing regulations of the ADA to all new construction and altered public accommodation areas is required for this hotel unless it would be structurally impracticable in which case compliance is required to the extent that it is not structurally impracticable.

8. The facilities owned and operated by Utica Group LLC are non-compliant with the remedial provisions of the ADA. As Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104,

Defendant is responsible for complying with the obligations of the ADA. Defendant's facilities as a hotel and place of public accommodation fails to comply with the ADA and its regulations, as also described further herein.

9. Plaintiff Leland Foster is an individual diagnosed with cerebral palsy and permanently uses a wheelchair for mobility. Plaintiff has difficulty grasping with his hands also as a result of his disability. As such, he is substantially limited in performing one or more major life activities, including but not limited to, standing and walking, as defined by the ADA and its regulations thereto.

10. Mr. Foster is an avid adaptive sports enthusiast and participates regularly with the active local adaptive sports community in Southeast Michigan and most often with the groups Wheels In Motion, Oakland County Parks, and Michigan Adaptive.  Leland Foster travels to the area to participate in adaptive sporting, has friends in the area whom he socializes with regularly, and frequents many establishments in the Macomb County and Oakland County region and has at minimum twice been an overnight guest at the property that forms the basis of this lawsuit.

11. Plaintiff Mr. Foster has been an overnight hotel guest at the property that forms the basis of this lawsuit, most recently on or about June 3-4, 2023 and October 2, 2022, as well as prior occasions, and he plans to return to the

property to avail himself of the goods and services offered to the public at the property.  Plaintiff encountered architectural barriers at the subject property that violate the ADA and its regulations.  The barriers to access at the property have endangered Plaintiff's safety.

12.  Plaintiff Derek Mortland is an individual diagnosed with spinal paralysis and permanently uses a wheelchair for mobility. As such, Mr. Mortland is substantially limited in performing one or more major life activities, including but not limited to, standing and walking, as defined by the ADA and its regulations thereto.

13.  Mr. Mortland is employed as an ADA speaker, consultant, expert and ADA coordinator, with one aspect of his expertise focusing on inspection of places of public accommodation for ADA compliance and in that capacity has consulted for private clients throughout the Midwest.

14.  On or about December 8-9, 2024, Plaintiff Derek Mortland was an overnight guest at the Defendant's hotel as bona fide guest while on business in the area.  He plans to return to the property to avail himself of the goods and services offered to the public at the property.  The Plaintiff has encountered architectural barriers at the subject property.  The barriers to access at the property have endangered his safety and protected access to Defendant's place of public accommodation.

15. Plaintiffs have a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations contained in this complaint. Plaintiffs have reasonable grounds to believe that they will continue to be subjected to discrimination in violation of the ADA by the Defendant. Plaintiffs each desire to visit the Defendant's place of business again on future occasions, not only to avail themselves of the goods and services available at the property but to assure themself that this property is in compliance with the ADA so that they and others similarly situated will have full and equal enjoyment of the hotel and its amenities without fear of discrimination.

16. The Defendant has discriminated against the individual Plaintiffs by denying them access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 *et seq.*

17. The Defendant has discriminated and is continuing to discriminate, against the Plaintiffs in violation of the ADA by failing to, *inter alia*, have accessible facilities by January 26, 1992 (or January 26, 1993, if Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

18. A preliminary inspection of La Quinta Utica, including its facilities, has

shown that many violations of the ADA exist.  These violations include, but are not limited to:

Parking and Accessible Routes

A. Designated accessible parking has not been maintained as evidenced by fading paint, asphalt damage, and cracks or changes in level on the designated accessible parking surfaces, in violation of the ADA and 28 C.F.R. § 36.211 and 49 CFR 37.161, whose remedy is strictly required or, at minimum, readily achievable.

B. There is not the required 5-foot-wide marked access aisle in the vehicle pull-up space at the hotel passenger loading zone, in violation of the ADA section 503.3 of the 2010 Standards and 1991 ADAAG section 4.6.6, whose remedy is strictly required, or at minimum, readily achievable.

C. Designated parking access aisles do not lead to an accessible route due to the presence of curbs, in violation of the ADA and section 502.3 of the 2010 Standards and 1991 ADAAG section 4.6.3, whose remedy is strictly required or, at minimum, readily achievable.

D. There are cracks and changes in level on the accessible route from the designated accessible parking to the entrance, in violation of the ADA and section 303.2 of the 2010 Standards and 1991 ADAAG section 4.3.8, whose remedy is strictly required or, at minimum, readily achievable.

E. There are cracks and changes in level on the designated accessible parking surfaces, in violation of the ADA section 502.4 of the 2010 Standards and 1991 ADAAG section 4.6.3, whose remedy is readily achievable.6 of the 2010 Standards, whose remedy is strictly required or, at minimum, readily achievable.

Access to Goodes & Services

F. Amenities and items in the breakfast area are located above allowable reach range, in violation of the ADA and Section 308.2.1 of the 2010 Standards and 1991 ADAAG Section 4.2.5, whose remedy is strictly required or, at

minimum, readily achievable.

G. Point of sale devices are located above allowable reach range at the hotel's registration desk, in violation of the ADA and Section 308.2.1 of the 2010 Standards and 1991 ADAAG Section 4.2.5, whose remedy is strictly required or, at minimum, readily achievable.

## Fitness Room

H. The fitness center door requires greater than 5lbs of force to operate, in violation of the ADA and Section 404.2.9 of the 2010 Standards and 1991 ADAAG Section 4.13.11(2), whose remedy is strictly required or, at minimum, readily achievable.

## Swimming Pool

I. The pool door requires greater than 5lbs of force to operate, in violation of the ADA and Section 404.2.9 of the 2010 Standards and 1991 ADAAG Section 4.13.11(2), whose remedy is strictly required or, at minimum, readily achievable.

J. The pool area emergency phone and first aid kit are located above allowable reach range, in violation of the ADA and Section 308.2.1 of the 2010 Standards and 1991 ADAAG Section 4.2.5, whose remedy is strictly required or, at minimum, readily achievable.

K. There are no accessible shower facilities at the pool area, though there is one available to guests without disabilities, in violation of the ADA and Section 213.3.6 of the 2010 Standards and 1991 ADAAG Section 4.1.3(11), whose remedy is strictly required or, at minimum, readily achievable.

L. The pool lift is inoperable for independent use, in violation of the ADA and Section 242.2 of the 2010 Standards, whose remedy is strictly required or, at minimum, readily achievable.

## Public Restrooms

M. The men's restroom door requires greater than 5lbs of force to operate, in violation of the ADA and Section 404.2.9 of the 2010 Standards and 1991

ADAAG Section 4.13.11(2), whose remedy is strictly required or, at minimum, readily achievable.

N. The men's restroom door lacks compliant maneuvering clearance at the latch side to exit, in violation of the ADA and Section 404.2.4.1 of the 2010 Standards and 1991 ADAAG section 4.13.6, whose remedy is strictly required or, at minimum, is readily achievable.

O. The men's restroom lavatory pipes are not insulated to protect against scalding or contact, in violation of the ADA and section 606.5 of the 2010 Standards and 1991 ADAAG section 4.19.4, whose remedy is strictly required or, at minimum, readily achievable.

P. The men's restroom water closet toilet tank/lid impedes use of the rear grab bar whereas there must be 1 1/2 inches minimum between the grab bar and projecting objects below and at the ends, in violation of the ADA and section 609.3 of the 2010 Standards and 1991 ADAAG Section 4.26.2, whose remedy is strictly required or, at minimum, readily achievable.

Q. The men's restroom water closet flush control is not located on the open side of the unit, in violation of the ADA and section 604.6 of the 2010 Standards and 1991 ADAAG section 4.16.5, whose remedy is strictly required or, at minimum, readily achievable.

R. The men's restroom water closet is not located 16 to 18 inches from the side wall or partition measured to its centerline, in violation of the ADA and Section 604.2 of the 2010 Standards and 1991 ADAAG Section 4.16.2, whose remedy is strictly required or, at minimum, readily achievable.

S. The men's restroom toilet paper dispenser is not mounted 7 inches minimum and 9 inches maximum in front of the toilet measured to the centerline of the dispenser, in violation of the ADA and section 604.7 of the 2010 Standards and 1991 ADAAG section 4.16.6 whose remedy is strictly required or, at minimum, readily achievable.

T. The men's restroom the side grab bar is out of compliance and does not extend 54 inches minimum from the rear wall, in violation of the ADA section 604.5.1 of the 2010 Standards and 1991 ADAAG section 4.16.4

whose remedy is strictly required or at minimum is readily achievable.

U. The coat hook inside the men's restroom compartment is mounted too high, in violation of the ADA and Section 308.2.1 of the 2010 Standards and 1991 ADAAG Section 4.2.5, whose remedy is strictly required or, at minimum, readily achievable.

V. The women's restroom contains equivalent barriers to accessibility, in violation of the ADA whose remedy is strictly required or, at minimum, readily achievable. A survey of the restroom is necessary.

Unisex Public Restroom

W. The restroom door requires greater than 5lbs of force to operate, in violation of the ADA and Section 404.2.9 of the 2010 Standards and 1991 ADAAG Section 4.13.11(2), whose remedy is strictly required or, at minimum, readily achievable.

X. The restroom lavatory pipes are not insulated to protect against scalding or contact, in violation of the ADA and section 606.5 of the 2010 Standards and 1991 ADAAG section 4.19.4, whose remedy is strictly required or, at minimum, readily achievable.

Y. The coat hook is mounted too high, in violation of the ADA and Section 308.2.1 of the 2010 Standards and 1991 ADAAG Section 4.2.5, whose remedy is strictly required or, at minimum, readily achievable.

Z. The rear wall grab bar is not 36" minimum in length as required and does not extend at least 12 inches on one side and does not extend 24 inches from the unit centerline on the open side and is also mounted in excess of 36 inches above the floor to the top of the gripping surface, in violation of the ADA and section 604.5.2 of the 2010 Standards and 1991 ADAAG section 4.16.3, whose remedy is strictly required or, at minimum, readily achievable.

AA.    The side grab bar around the water closet is mounted in excess of 36 inches above the floor to the top of the gripping surface and does not extend 54 inches minimum from the rear wall, in violation of the ADA section 604.5.1 of the 2010 Standards and 1991 ADAAG section 4.16.4, whose

remedy is strictly required or, at minimum, readily achievable.

BB.     The paper towel dispenser is mounted only 2 inches above the grab bar and impedes use of the rear grab bar whereas projecting objects must be located 12 inches above minimum, in violation of the ADA and section 609.3 of the 2010 Standards and 1991 ADAAG 4.26.2, whose remedy is strictly required or, at minimum, readily achievable.

CC.     The lavatory obstructs required clear floor space around the water closet, in violation of the ADA and section 604.3.1 of the 2010 Standards and 1991 ADAAG section 4.16.2, whose remedy is strictly required or, at minimum, readily achievable.

DD.     The restroom water closet is not located 16 to 18 inches from the side wall or partition measured to its centerline, in violation of the ADA and Section 604.2 of the 2010 Standards and 1991 ADAAG Section 4.16.2, whose remedy is strictly required or, at minimum, readily achievable.

<u>Guest Rooms</u>

EE.     There is not the required number of designated accessible guestrooms with mobility features, whereas for a hotel with 103 total guest rooms, five mobility accessible rooms without roll-in showers are required and two with roll-in showers are required, totaling seven (7) guest rooms with mobility features. This is in violation of the ADA and section 224.2 of the 2010 Standards and section 9.1.2 of the 1991 ADAAG whose remedy is strictly required or, at minimum, readily achievable.

FF. The hotel's designated accessible guestrooms are not disbursed among the various classes of guestrooms, whereas the property offers numerous different types of rooms and various bed arrangements including suites and penthouses.  These rooms offer different square footages, amenities and widely varied price points.  However, guests who require mobility accessible accommodations are restricted to a double bed, whereas able-bodied patrons and guests have access to reserve and stay at the full range of room classes including 2 double beds and King Bed Deluxe Room. This is in violation of the ADA and section 224.5 of the 2010 Standards and section 9.1.4(1) of the 1991 ADAAG whose remedy is strictly required or, at

minimum, readily achievable.

GG.    The other mobility designated accessible guestrooms fitted with a roll-in shower (or other type) have similar violations of the ADA and its implementing regulations as noted in guestroom #109 as well as other barriers, the removal of which is strictly required or is at minimum readily achievable.  Further inspection of these rooms is required.

Designated Mobility Accessible Guestroom #109

HH.    Room signage lacks the international symbol of accessibility, in violation of the ADA and Section 216.8 of the 2010 Standards, whose remedy is strictly required or, at minimum, readily achievable.

II. Directional signage on the guestroom door is noncompliant, in violation of the ADA and Section 703.5 of the 2010 Standards, whose remedy is strictly required or, at minimum, readily achievable.

JJ.  The guestroom door requires greater than 5lbs of force to operate, in violation of the ADA and Section 404.2.9 of the 2010 Standards and 1991 ADAAG Section 4.13.11(2), whose remedy is strictly required or, at minimum, readily achievable.

KK.    The bathroom mirror is located in excess of 40 inches above the finish floor to the reflective surface, in violation of the ADA and section 603.3 of the 2010 Standards and 1991 ADAAG section 4.19.6, whose remedy is strictly required or, at minimum, readily achievable.

LL.    The robe hook is located above allowable reach range, in violation of the ADA and Section 308.2.1 of the 2010 Standards and 1991 ADAAG Section 4.2.5, whose remedy is strictly required or, at minimum, readily achievable.

MM.    The shower sprayer is not located on the back wall of the roll-in shower, in violation of the ADA and Section 608.5.2 of the 2010 Standards and 1991 ADAAG Section 4.21.5, whose remedy is strictly required or, at minimum, is readily achievable.

NN.     The shower sprayer is located above allowable reach range, in violation of the ADA and Section 608.5.2 of the 2010 Standards, whose remedy is strictly required or, at minimum, is readily achievable.

OO.     There is no fixed seat in the roll-in shower, in violation of sections 608.4 of the 2010 ADA Standards and 1991 ADAAG sections 9.1.2, figure 57(a), figure 57(b) and 4.21.3, whose remedy is strictly required or, at minimum, readily achievable.

PP. Grab bars inside the roll-in shower compartment are non-compliant, in violation of the ADA and section 608.3.2 of the 2010 Standards and 1991 ADAAG section 4.21.2, whose remedy is strictly required or, at minimum, readily achievable.

QQ.     The towel rack above the water closet impedes use of the grab bar whereas projecting objects must be located 12 inches above minimum, in violation of the ADA and section 609.3 of the 2010 Standards and 1991 ADAAG 4.26.2, whose remedy is strictly required or, at minimum, readily achievable.

RR.     The towel rack above the water closet is located above allowable reach range, in violation of the ADA and Section 308.2.1 of the 2010 Standards and 1991 ADAAG Section 4.2.5, whose remedy is strictly required or, at minimum, readily achievable.

SS. The bathroom toilet paper dispensers is not mounted 7 inches minimum and 9 inches maximum in front of the toilet measured to the centerline of the dispenser, in violation of the ADA and section 604.7 of the 2010 Standards and 1991 ADAAG section 4.16.6 whose remedy is strictly required or, at minimum, readily achievable.

TT.     The side grab bar is out of compliance, is not 42 inches long minimum and does not extend 54 inches minimum from the rear wall and is also mounted in excess of 36 inches above the floor to the top of the gripping surface, in violation of the ADA section 604.5.1 of the 2010 Standards and 1991 ADAAG section 4.16.4 whose remedy is strictly required or at minimum is readily achievable.

UU.	The maneuvering clearance to access the closet is blocked by furniture, in violation of the ADA and section 404.2.4.1 of the 2010 Standards and 1991 ADAAG section 4.13.6, whose remedy is strictly required or, at minimum, readily achievable.

VV.	The clear floor space to access the curtain adjuster is blocked by furniture, in violation of the ADA and section 305.3 of the 2010 Standards and 1991 ADAAG section 4.2.4.1, whose remedy is strictly required or, at minimum, readily achievable.

WW.	The closet bar and shelf are located above allowable reach range, in violation of the ADA and Section 308.2.1 of the 2010 Standards and 1991 ADAAG Section 4.2.5, whose remedy is strictly required or, at minimum, readily achievable.

Policies and Procedures

XX.	The Defendant lacks or has inadequate defined policies and procedures for the assistance of disabled patrons, including a policy of maintenance of its accessible features, in violation of the ADA, whose remedy is strictly required or at minimum is readily achievable.

YY.	The Defendant's inadequate procedures for the benefit of its patrons with disability extend to its failure to conduct a self-survey of its facilities and amenities that has resulted in discriminatory conduct toward Leland Foster and Derek Mortland.

19.	The discriminatory violations described in Paragraph 18 by the Defendant is not an exclusive list of the ADA violations believed to exist at the place of public accommodation. Plaintiffs require further inspection of the Defendant's place of public accommodation in order to determine, photograph and measure all of the discriminatory acts violating the ADA and areas of non-compliance with the Americans with Disabilities Act creating

14

barriers to handicap access. The Plaintiffs have been denied access to Defendant's accommodations; benefit of services; activities; and have otherwise been discriminated against and damaged by the Defendant, as set forth above. The individual Plaintiffs, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITES ACT

20.     Plaintiffs restate the allegations of ¶¶1-19 as if fully rewritten here.

21.     The hotel at issue, as owned and operated by Utica Group LLC, constitutes a public accommodation and service establishment, and as such, must be, but is not, in compliance with the Americans with Disabilities Act ("ADA") or Americans with Disabilities Act Accessibility Guidelines ("ADAAG").

22.     Plaintiffs were unlawfully denied full and equal enjoyment of the goods, services, facilities, privileges, and advantages of the property on the basis of disability due to Defendant's failure to comply with Title III of the Americans with Disabilities Act and its accompanying regulations, as prohibited by 42 U.S.C. § 12182, *et seq.* Defendant will continue to discriminate against Plaintiffs and others with disabilities unless and until Defendant is compelled to remove all physical barriers that exist at the facility, including those

specifically set forth herein, and make the facility accessible to and usable by persons with disabilities, including Plaintiffs.

23. The Plaintiffs, and others similarly-situated, are presently without adequate remedy at law and is damaged by irreparable harm. Plaintiffs reasonably anticipate that they will continue to suffer irreparable harm unless and until Defendant is required to remove the physical barriers, dangerous conditions, and ADA violations that exist at the Facility, including those set forth herein.

24. Pursuant to 42 U.S.C. §12187, Plaintiffs request that the Court issue an injunction requiring Defendant to bring their place of public accommodation into full compliance with the implementing regulations of the ADA or at minimum make all readily achievable alterations and institute policies and procedures as are legally required to provide full and equal enjoyment of the goods, services, facilities, privileges, and advantages on its property to disabled persons. In connection with that relief, Plaintiff requests reasonable attorney's fees and costs of maintaining this action.

## COUNT II
## VIOLATION OF MICHIGAN PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, M.C.L. § 37.1301 *et seq.*

25. Plaintiffs restate the allegations of ¶¶1-24 as if fully rewritten here.

26. Utica Group LLC owns or operates a "place[s] of public accommodation" pursuant to M.C.L §37.1301(a).

25.    Defendant has committed unlawful acts pursuant to M.C.L §37.1302(a) by denying Plaintiffs the full enjoyment of its goods, services, accommodations, advantages, facilities, or privileges. Whereas, the Defendant's property has been constructed and maintained without regard to the ability of patrons with mobility impairment. The hotel lacks compliant amenities in it mobility accessible restrooms, most importantly showers for bathing, for use by disabled guests. This has caused Mr. Foster and Mr. Mortland damages.

26.    Pursuant to M.C.L §37.1606, Plaintiffs are entitled to compensatory and exemplary damages, and attorneys' fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00, as well as issuance of an injunction requiring Defendant to allow full and equal enjoyment of its goods, services, facilities, privileges, and advantages to disabled persons.

**WHEREFORE**, Plaintiffs demand,

    For **COUNT I**, an injunction requiring Defendant to make all readily achievable alterations and institute policies and procedures to allow full and equal enjoyment of the goods, services, facilities, privileges, and advantages to disabled persons, and the reasonable attorneys' fees and costs of maintaining this action; and,

For **COUNT II**, compensatory and exemplary damages, attorneys' fees and costs, in an amount to be determined at trial, but in any event not less than $25,000.00, as well as issuance of an injunction requiring Defendant to allow full and equal enjoyment of the goods, services, facilities, privileges, and advantages to disabled persons.

Respectfully Submitted,

*Counsel for Plaintiffs:*

/s/ Owen B Dunn Jr.
Owen B. Dunn, Jr., Esq. (p66315)
Law Offices of Owen Dunn, Jr.
The Offices of Unit C
6800 W. Central Ave., Suite C-1
Toledo, OH 43617
(419) 241-9661 – Phone
(419) 241-9737 – Facsimile
Monroe, MI (734) 240-0848
Email: obdjr@owendunnlaw.com

18